IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VINCENT RAY SETTLES,<br>TDCJ No. 1939000, | § | |
| | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:17-cv-1675-D-BN |
| | § | |
| DIRECTOR, TDCJ-CID, | § | (Consolidated With: |
| | § | No. 3:17-cv-1676-D-BH) |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Vincent Ray Settles, a Texas prisoner, "was convicted by a jury of unlawful possession of a firearm by a felon and aggravated assault with a deadly weapon," and he was sentenced to a total term of 40 years of imprisonment. *Settles v. State*, Nos. 05-14-00382-CR & -00383-CR, 2015 WL 3522838 (Tex. App. – Dallas June 3, 2015, pet. ref'd) (footnotes omitted), *aff'g as modified State v. Settles*, Nos. F14-00085-J & -00086-J (Crim. Dist. Ct. No. 3, Dallas Cnty., Tex. Mar. 19, 2014) [Dkt. Nos. 15-2 & 15-3].

The Texas Court of Criminal Appeals ("CCA") denied Settles's state habeas applications without written order. *See Ex parte Settles*, WR-86,349-01 & -02 (Tex. Crim. App. Mar. 1, 2017) [Dkt. No. 15-10]. He filed this action on May 24, 2017, the date on which he certifies that he placed his 28 U.S.C. § 2254 petition [Dkt. No. 3] in the prison mailing system.[1] *See id.* at 10. And his case was referred to the undersigned

---

[1] *See* RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is

United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge Sidney A. Fitzwater.

As ordered, *see* Dkt. No. 8, the State responded to the habeas application, *see* Dkt. No. 13. Settles filed a reply. *See* Dkt. No. 20. And the undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

## Applicable Background

The factual background is drawn from the Dallas Court of Appeals's decision:

> Lorenza Padilla testified that she was living in a second-floor apartment at the Venue at Greenville apartments on July 8, 2013, in Dallas, Texas. She was in her apartment on that day when she heard what sounded like an iron rod being thrown to the ground. She went to the window and looked out over the parking lot, but saw nothing. She soon heard what sounded like a thump in the area of her kitchen door and went to the window near the door to investigate. She was opening the blinds when she heard a thud on her door, followed by another thud, at which point a man knocked down the door and landed on the floor of Padilla's apartment. Padilla recalled that the man, a black male, "seemed to be very drunk." She saw a gun in his hand. Padilla jumped over the man's legs while he was still lying on the floor and fled out the door of the apartment. Padilla made it down the first set of stairs before the man caught up to her, put his arm around her neck, and held a gun to her head. Padilla thought the man was going to kill her. She recalled that he was saying something to her in English, but Padilla, who spoke only Spanish, did not understand him. She asked him in Spanish if he wanted money, pointing toward the door to her apartment and saying "dinero." The man then let Padilla go and she ran to another apartment where a woman she knew let her in and called the police.
> The police took photographs of Padilla's injuries. At trial she

---

timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

identified photographs of her injuries that showed redness on her neck and some scratches.

Padilla testified that she first saw the gun in the man's hand when he fell into her apartment. She testified that the gun seemed to be black but she just glanced at it. When asked if she saw the gun or could feel it when it was placed against her neck, Padilla testified: "[W]hen it was here, I could feel it, I – and then I could see it. I – I just was very afraid." She admitted on cross-examination that she originally told officers that these events occurred inside her apartment rather than on the stairwell. She also testified that she had previously seen the man who broke into her apartment smoking and drinking on the stairs of the apartment complex, and thought he lived at the complex.

Other evidence showed that Dallas police received four 911 calls reporting an armed man at the Venue at Greenville apartments on July 8, 2013. One of those 911 calls was made by Alice Cabellero, who was working at the apartment complex's leasing office on the day in question. She testified that she made the 911 call after she saw a man running towards the leasing office with a gun. She described him as a black male wearing a white t-shirt and blue jeans. She told the 911 operator that the man was running towards building 15. She followed him through the apartment complex to building 17, arriving there at around the same time as the Dallas Police officers responding to the 911 calls.

The first Dallas officers to arrive at the scene were Officer Emily Bailey and her senior training officer. Officer Bailey testified that at around 5:00 to 6:00 p.m. on July 8, 2013, she was on patrol with a senior training officer – she was on the fourth or fifth week of her officer training – when they received a high-priority call about a person with a weapon at an apartment complex at 5759 Pineland who was "actively shooting." The officers pulled up to the street before the gate to the complex, where a woman flagged them down and told them "he's in there, he's in there." The officers entered the complex and drove around looking for a man matching the description they had been given – an armed black male with a white t-shirt and blue jeans. When Officer Bailey, who was driving, drove around the corner of one building, she saw a black male in a white t-shirt and blue jeans kicking in a window. Officer Bailey identified this man in court as appellant. After the officers got out of the squad car, they approached appellant on foot with their weapons drawn and ordered him to show them his hands, but appellant did not respond. Then, suddenly, appellant fell forward to the ground, and was resting on his hands. The officers continued ordering appellant to show them his hands; he did not comply. Appellant got up and tried to run away, but Officer Bailey pursued appellant "and took him to the ground." With the assistance of other officers, she handcuffed appellant. After the officers handcuffed appellant, they carried him and placed him

in one of the patrol cars.

Officer Bailey testified that appellant "was not acting like a sober person." She added, "I think he was under the influence of something." Officer Bailey also testified that appellant continued struggling after he was handcuffed and placed in the squad car – trying to kick out the windows. The officers removed him from the vehicle and held him down.

After the officers got appellant under control, Officer Bailey went around the complex and started interviewing potential witnesses. She tried to interview Padilla but "it didn't work" because Padilla spoke only Spanish. A Spanish-speaking officer was brought in to talk to her.

Officers also interviewed Daniel Lynn, who lived in a ground-floor apartment in building 17 at the Venue at Greenville apartments. Lynn was at home that day with his father, his brother Clifton, his brother's girlfriend, and his brother's friend. He went outside to smoke a cigarette and saw appellant, whom he recognized as a person that lived "like cater-corner from us" at the complex, "acting erratic and paranoid." Lynn could see appellant had a gun. Appellant went up the stairs to the floor above Lynn's apartment. Lynn went back into his apartment, locked the door, and told his brother to call 911. He told everyone to get back into their rooms and told his father to get down on the floor. They soon heard two gunshots and loud noises that sounded like someone running coming from the floor above Lynn's apartment. Then they "heard a boom against the door," and a window inside their apartment broke only seconds later. Someone had entered their apartment. Lynn and his companions barricaded themselves in two back bedrooms; they could hear someone outside "rustling around" in the apartment. They stayed hidden until they knew the police had entered the apartment. Lynn testified that the apartment "was trashed." The police investigated inside Lynn's apartment and dusted for fingerprints. After they left, as he was cleaning up the apartment, Clifton found a .40 caliber Smith and Wesson handgun hidden underneath some clothing. He called the police and they took custody of the gun.

Dallas Police officers also searched the second-floor apartment at the Venue at Greenville where Brandon Dunn lived with his grandparents and appellant, his uncle. Dunn testified that when he arrived home from work on the afternoon of July 8, 2013, the police were there waiting. He signed a consent form that allowed officers to search the apartment. Inside the apartment, Dallas police officer Kevin Moss found two fired cartridge casings and a magazine from a pistol that held live rounds. He also saw a defect in the wall that was consistent with a fired bullet. Dunn did not recall seeing any ammunition or shell casings about the apartment when he left for work that morning.

*Settles*, 2015 WL 3522838, at *1-*3 (footnotes omitted).

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2244(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, ___ F.3d ____, No. 18-70030, 2020 WL 4744894, at *5 (5th Cir. Aug. 17, 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon"

(citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state

court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the

district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 2020 WL 4744894, at *6.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the

state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

Settles attacks the state criminal judgments on five grounds. First, repeating an issue that he raised on state habeas review, he argues that he was denied a fair trial by the joinder of the two charged offenses into a single trial. He next re-urges an issue that he raised on direct appeal – that the trial court erred by denying his requested jury instruction for a lesser-included offense in the aggravated assault case. Related to this re-urged ground, Settles argues that a witness for the State committed perjury. He next argues that he is actually – that is, factually – innocent. And Settles finally raises, as he did in the state habeas court, various reasons why he believes that he was denied the effective assistance of counsel at trial.

I.    Actual Innocence

To the extent that Settles presents a stand-alone, substantive claim of "actual innocence," such a claim is not recognized as an independent ground for federal habeas relief and should therefore be denied. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993))); *see also, e.g., House v. Bell*, 547 U.S. 518, 554-55 (2006); *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014); *cf. Schlup v. Delo*, 513 U.S. 298, 314

(1995) (distinguishing "procedural" claims of innocence, which are based on a

separate, underlying claim that a defendant was denied "the panoply of protections

afforded to criminal defendants by the Constitution").

II.    <u>Improper Joinder</u>

As the State responded to Settles's claim that the joinder of his two charged

offenses into a single proceeding denied him a fair trial,

> [j]oinder of prosecutions for two or more offenses arising out of the same
> criminal episode is permitted by the Texas Penal Code. *See* TEX. PENAL
> CODE ANN. § 3.02(a) (providing that a defendant may be prosecuted in a
> single criminal action for all offenses arising out of the same criminal
> episode). However, a defendant is entitled to a severance of the offenses
> if he requests one prior to trial. *Id.* § 3.04(a); *see also Coleman v. State*,
> 788 S.W.2d 369, 371 (Tex. Crim. App. 1990) (when a defendant timely
> requests a severance under section 3.04(a), his right to a severance is
> absolute and the severance is mandatory). A claim that the trial court
> improperly joined his offenses and/or improperly denied his request for
> a severance may also be raised on direct appeal. Here, applicant failed
> to do either.

Dkt. No. 16-20 at 57-58.

Relatedly,

> [t]o preserve a claim for federal habeas review, a defendant must make
> a specific and timely objection at the time of the allegedly objectionable
> conduct. Failure to object constitutes a procedural default, which bars
> federal habeas relief unless the petitioner shows either cause for the
> default and actual prejudice flowing from the alleged constitutional
> violation, or a miscarriage of justice.

*White v. Thaler*, 522 F. App'x 226, 230 (5th Cir. 2013) (per curiam) (citing *Wainwright*

*v. Sykes*, 433 U.S. 72, 86-87, 87-91 (1977)); *see also Tanksley v. Lynaugh*, CIV. A. No.

V-87-40, 1998 WL 90187, at *2 (S.D. Tex. May 5, 1988) ("The state appellate court

held that the Petitioner did not comply with the state's procedural rules.

Consequently, Petitioner's claim is governed by *Wainright v. Sykes*, 433 U.S. 72

- 12 -

(1977). The *Sykes* bar precludes federal habeas corpus relief on grounds which were not presented to the state court in the manner prescribed by the state's procedural rules, absent cause for the omission and actual prejudice.").

This ground for Section 2254 relief should therefore be denied as procedurally defaulted, because Settles has "failed to demonstrate a fundamental miscarriage of justice" and "did not offer any cause for the default." *White*, 522 F. App'x at 230; *see also Sykes*, 433 U.S. at 87-91.

III.    Jury Instruction

As to Settles's habeas claim concerning the trial court's denying him a lesser-included offense instruction, first, "[i]n a non-capital murder case, the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue." *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988) (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)); *accord Creel v. Johnson*, 162 F.3d 385, 390-91 (5th Cir. 1998); *see also Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) ("Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief." (citing *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991))).

"Absent a violation of the Constitution, [federal courts] defer to the state court interpretation of its law for whether a lesser-included-offense instruction is warranted." *Creel*, 162 F.3d at 391 (citing *Valles*, 835 F.2d at 128); *see also Galvan*, 293 F.3d at 764 ("In examining habeas claims of improper jury instructions, the 'inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude.'" (quoting

*Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986))).

To determine whether habeas relief is justified based on constitutional prejudice,

> [t]he relevant inquiry is whether the failure to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Moreover, there is a strong presumption that errors in jury instructions are subject to harmless-error analysis. Thus, even if the instruction was erroneous, if the error is harmless, habeas corpus relief is not warranted. *Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993). In a habeas proceeding, a constitutional error is not harmless if it "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (internal quotation marks and citation omitted).

*Galvan*, 293 F.3d at 764-65; *see also Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) ("[A] constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict.").

Settles has not made this showing. The undersigned has looked through to the Dallas Court of Appeals's substantial consideration of the issue of whether "the trial court erred by denying [Settles's] request for a jury instruction on a lesser-included offense of simple assault by threat in the aggravated assault case," *Settles*, 2015 WL 3522838, at *3; *see id.* at *3-*6; *see also Ylst v. Nunnemaker*, 501 U.S. 797, 804-06 (1991). The court of appeals concluded that, "[b]ecause [it found] no affirmative evidence in the record that appellant was guilty of only simple assault, even [assuming that] appellant's issue was preserved, the trial court properly denied appellant's request for a lesser-included offense instruction." *Settles*, 2015 WL

3522838, at *6. And, to the extent that this decision implicates a constitutional determination, Settles has shown neither that such a determination was unreasonable nor that any unreasonable determination was prejudicial.

This ground for Section 2254 relief should therefore be denied.

## IV.    Perjury

Related to (and in support of) his claim that he was entitled to a lesser-included offense instruction, Settles alleges in his Section 2254 – without further support – that a witness for the State, Lorenza Padilla, lied under oath.

"The Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using, or failing to correct, false testimony." *United States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 271 (1959)); *see also Isaac v. Cain*, 588 F. App'x 318, 327 (5th Cir. 2014) (per curiam) ("Under *Napue*, 'a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.'" (quoting 360 U.S. at 269; citations omitted)).

"To establish a due process violation based on the government's use of false or misleading testimony, a petitioner must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997). But "due process is [ ] implicated by the prosecution's introduction or allowance of false or perjured testimony [only when] the prosecution actually knows or believes

the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements." *United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981) (citations omitted). Thus,

> [w]hen attempting to show perjured testimony, the false or misleading nature of certain testimony cannot be established simply by pointing to contradictory testimony from other witnesses, inconsistencies within a witness's testimony, or conflicts between or among written statements and live testimony. Such matters go only to the weight of the evidence and the credibility of the witness.

*Craig v. Director, TDCJ-CID*, No. 5:07cv167, 2013 WL 4711483, at *14 (E.D. Tex. Aug. 30, 2013) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)).

Settles has only argued in support of this ground that Padilla's whole testimony was perjury. As such, he has not shown that the state court's denial of this claim was unreasonable. This ground for Section 2254 relief should therefore be denied.

## V.    Ineffective Assistance of Trial Counsel

Turning finally to the various reasons why Settles believes that his trial counsel provided constitutionally ineffective assistance of counsel ("IAC"), the Court reviews IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a

state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-

12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in

tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[2]

Settles makes seven separate IAC contentions in his Section 2254 application – that counsel failed to (1) object or request a jury instruction on the lesser-included offense of simple assault; (2)  object to the joint trial; (3) challenge the medical record; (4) challenge the deadly weapon instruction or check if the gun belonged to him; (5) object to perjured testimony; (6) do an independent investigation of the facts or

---

[2] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

request the court to appoint an investigator; and (7) interview witnesses.

### A.    IAC Claims 6 and 7

Only the first five were raised in the state proceedings. *See, e.g.,* Dkt. No. 16-20 at 59. Thus, the factual and legal basis for the sixth and seventh IAC contentions have not "been fairly presented to the" CCA, as the highest available state court, for review, which means that Settles has failed to properly exhaust state court remedies as to these IAC claims. *Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court' so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim.'" (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004))); *see* 28 U.S.C. § 2254(b)(1)(A).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows

that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. But these claims are procedurally barred, because Settles has not shown that the claim would be allowed in a subsequent habeas proceeding in state court under Texas law. Nor has he asserted the "fundamental miscarriage of justice" exception to procedural bar.

The Court should therefore deny IAC Claims 6 and 7 as procedurally barred.

### B.    IAC Claim 1

In his first IAC claim also made in the state habeas proceedings, Settles claims that his trial counsel's performance was constitutionally ineffective because counsel failed to request a lesser-included offense instruction on simple assault. First, his counsel did request a lesser-included offense instruction on simple assault causing bodily injury and then objected when his request was denied at trial. *See Settles*, 2015 WL 3522838, at *3-*4. As explained on direct appeal (and set out above), Settles was not entitled to the lesser-included offense instruction on simple assault by threat. *See id.* at *5. And he has not shown that the Dallas Court of Appeals's decision on this

issue is unreasonable. Thus, his related IAC claim also fails. *Cf. Soliz v. Davis*, 750 F. App'x 282, 292-93 (5th Cir. 2018) (per curiam) (denying certificate of appealability where the district court "reasoned that because a state court had concluded that an objection to the redacted letter under state law would have been futile, a federal habeas court could not conclude otherwise," and the United States Court of Appeals for the Fifth Circuit observed that, "[t]o succeed on the [IAC] claim, Soliz must show that counsel's failing to object was deficient and that he was prejudiced by the deficiency"; that "'[i]n order to show that counsel was deficient for failing to object,' though, 'the objection must have merit'"; that federal courts must "defer to a state court's determination that an objection would have been meritless under state law because 'in our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law'"; and thus, that "Soliz cannot make a substantial showing under *Strickland* because Soliz's 'counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless'" (quoting *Ries v. Quarterman*, 522 F.3d 517, 530 (5th Cir. 2008), *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004), then *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); citation omitted)).

The CCA's denial of this claim was therefore not unreasonable. *See, e.g.*, *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)); *see also, e.g.*, *Rhoades*, 852 F.3d at 432, 434; *Sanchez*, 936 F.3d at 305.

### C.    IAC Claim 2

Settles next contends that counsel's failure to object to a joint trial was

constitutionally deficient, because the joinder manipulated and deceived the jury to make them believe that he committed both offenses.

"Section 3.02 of the Texas Penal Code permits the consolidation of separate criminal charges against a single defendant that arise out of a single criminal episode." *Werner v. State*, 412 S.W.3d 542, 546 (Tex. Crim. App. 2013) (citing TEX. PENAL CODE § 302)). But Section 3.04(a) of the Texas Penal Code

> grants defendants an absolute right to sever most charges that have been consolidated under Section 3.02. When a defendant files a motion for severance, the trial judge does not have discretion to deny that motion unless the defendant has been charged with an offense listed in Section 3.03(b)[, not applicable here.] Texas' mandatory severance rule is different from the federal rule of discretionary severance and reflects concerns about the disadvantages defendants may face in a consolidated trial:
>
> > (1) that the jury may convict a "bad man" who deserves to be punished – not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged.
> >
> > Although Section 3.04 was enacted for the defendant's benefit, the risk he runs in requesting a severance is that the trial judge then has discretion to require consecutive sentences if the defendant is convicted in separate trials.

*Id.* at 546-47 (quoting *Llamas v. State*, 12 S.W.3d 469, 471-72 (Tex. Crim. App. 2000); footnotes omitted).

On habeas review, Settles is asking that the Court second-guess a strategic decision that his counsel made at trial. In doing so, the Court is "required not simply to give [his counsel's] the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [Settles's] counsel may have had for proceeding as [he] did." *Clark*, 673 F.3d at 421. One obvious reason was the risk of consecutive sentences if Settles were to be convicted in separate trials. This reason alone counts as a

"'reasonable argument that counsel satisfied *Strickland*'s deferential standard,'" requiring that "the state court's denial [ ] be upheld." *Rhoades*, 852 F.3d at 432.

The CCA's denial of this claim was therefore not unreasonable. *See Garza v. Stephens*, 738 F.3d at 680; *Rhoades*, 852 F.3d at 432, 434; *Sanchez*, 936 F.3d at 305.

### D.    IAC Claims 3, 4, and 5

Settles next argues that his trial counsel should have: challenged medical records because the prosecution failed to show how an aggravated assault took place [Claim 3]; challenged the deadly weapon instruction or confirmed that the gun belonged to Settles [Claim 4]; and objected to the testimony Settles argues was perjured [Claim 5]. But all these actions would have been futile. And "counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless." *Turner*, 481 F.3d at 298 (footnote omitted).

First, the assault charged was with a deadly weapon by threat, so no medical records were at issue. *Cf.* Dkt. No. 15-20 (trial transcript excerpt in which Settles's counsel pointed out on cross-examination that the victim did not receive medical treatment). Next, the prosecution did not need to prove that Settles owned the gun to show that he possessed it. *See* Tex. Penal Code 46.04(a)(1); *see, e.g., Hutchings v. State*, 333 S.W.3d 917, 920 (Tex. App – Texarkana 2011, pet. ref'd). Finally, for the reasons explained above, Settles has not shown that there was perjured testimony – the same reasons also show that his counsel did not perform deficiently (by failing to object to this testimony).

The CCA's denial of these claims was therefore not unreasonable. *See Garza v.*

*Stephens*, 738 F.3d at 680; *Rhoades*, 852 F.3d at 432, 434; *Sanchez*, 936 F.3d at 305.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 10, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE